UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

RACHON JOHNSON, et al.,                    )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )        No.:   3:23-CV-392-TAV-DCP
                                           )
WAYNE BRAUN, et al.,                       )
                                           )
            Defendants.                    )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Airbnb, Inc.'s ("defendant")[1] motion to dismiss or, in the alternative, strike plaintiffs' prayer for punitive damages [Doc. 23] and defendant's motion to compel arbitration and stay proceedings [Doc. 26]. Plaintiff has responded [Docs. 31, 32], defendant has replied [Doc. 36, 37], and therefore, the motions are ripe for review. For the reasons set forth below, defendant's motion to dismiss [Doc. 23] is **GRANTED in part** and **DENIED in part**, and defendant's motion to compel arbitration and stay proceedings [Doc. 26] is **DENIED as moot**.

## I.      BACKGROUND

Plaintiffs Rachon Johnson, Quinetta Davis, Lazell Beard, Jr., and Amber Ford are citizens of the State of Tennessee, and plaintiffs Adrianne Taylor and James McNair are citizens and residents of the State of Michigan [Doc. 1 ¶¶ 10–15]. Defendant is a corporation that provides an online marketplace, specifically a website and mobile device

---

[1] While other defendants are involved in this case, for purposes of this memorandum opinion and order, the Court's usage of "defendant" will only refer to defendant Airbnb, Inc.

application, which connects home, apartment, and cabin owners located around the world to third parties intending to rent those properties [*Id.* ¶ 19]. Defendant is incorporated in Delaware with its principal place of business in the State of California [*Id.* ¶ 17; Doc. 24, p. 2].

In their complaint, plaintiffs allege that defendant states, on its website, that customer safety is a priority, promising that "[e]very Airbnb reservation is scored for risk before it's confirmed" and suspicious activity is flagged and investigated [Doc. 1 ¶ 20 (citation omitted)]. Additionally, plaintiff alleges that per the "community standards" developed by defendants, hosts are required to disclose the presence of security cameras and other recording devices to the guest [*Id.* ¶ 21 (citation omitted)]. Specifically, defendant requires hosts to indicate the presence of security cameras or recording devices, whether operational or not, in the "Things to Know" section of the listing and "disclose how guests will be monitored and if an active recording is taking place" [*Id.* (citation omitted)].

On or about February 5, 2023, plaintiffs used defendant's website and/or application to search for a place to stay in the Smoky Mountains of Tennessee [*Id.* ¶ 26]. During their search, plaintiffs found the listed for Wayne Braun's cabin, located in Sevierville, and booked it for February 20, 2023, through February 24, 2023 [*Id.*]. Plaintiffs contend that Braun informed visitors in his cabin listing that his property featured three exterior security camera all facing outwards and not looking into interior spaces [*Id.* ¶ 24]. Upon arrival to the cabin, plaintiffs did not notice the presence of any video and/or audio recording devices [*Id.* ¶ 27].

2

On or about February 23, 2023, plaintiff Beard, while shaving, attempted to remove a mirror from the wall of the cabin [*Id.* ¶ 31]. In doing so, Beard felt that the mirror was stuck on the wall, and when he looked behind the mirror, he discovered a camera taped to the back [*Id.*]. After Beard discovered the camera, he and the other plaintiffs began checking all of the mirrors in the cabin for cameras, locating at least one more [*Id.* ¶ 32]. The same day, plaintiff Davis contacted the Sevier County Sheriff's Office at 12:42 p.m. [*Id.* ¶ 33]. At 12:54 p.m., Braun sent an unprompted text message to the plaintiffs saying he was almost at the cabin and "wondering if [he] could have a moment . . . to explain" before dealing with law enforcement [*Id.* ¶ 34].

After arriving on scene, law enforcement examined the mirrors within the cabin and found three additional cameras taped to the back of mirrors [*Id.* ¶ 35]. In total, seven cameras were found, most of which were facing beds, showers, and sinks [*Id.* ¶ 35]. Five of the cameras and one, two-way mirror were confiscated as evidence [*Id.* ¶ 37]. Plaintiffs identify the cameras as "Blink" cameras, stating they are equipped with two-way audio, HD video, customizable motion detection, and a "live view" function which allows users to view the camera's live video and sound [*Id.* ¶ 38]. Later on February 23, 2023, Braun sent another text message to plaintiffs, stating that law enforcement had allowed him to make a call, presumably to Airbnb, in order to provide plaintiffs with a refund [*Id.* ¶ 42]. On September 5, 2023, Braun pled guilty to six counts of Observation without Consent under Tennessee Code Annotated § 39-13-607 [*Id.* ¶ 43].

Plaintiffs allege that defendant failed to inform them that video cameras were located in the interior of Braun's cabin or that such cameras were operating and capable of

3

capturing videos and/or audio recordings of plaintiffs [*Id.* ¶ 28]. Further, plaintiffs contend that defendant failed to inform them that the cameras were capable and set up to record plaintiffs "in various stages of undress, during intimate and private conversations, and during their most intimate moments, including during sexual relations" [*Id.*]. Plaintiffs state that they had no knowledge of the hidden cameras in Braun's cabin, nor did they ever consent to live projection, streaming or recording [*Id.* ¶ 41]. Additionally, as lawful occupants of the cabin, plaintiffs claim they had a reasonable expectation of privacy in the bedroom and bathroom areas of the cabin [*Id.* ¶ 40].

Plaintiffs bring seven causes of action against defendant: (1) interception and disclosure of wire, oral, or electronic communications, in violation of 18 U.S.C. § 2511; (2) unlawful photographing in violation of privacy, in violation of Tennessee Code Annotated § 39-13-605; (3) observation without consent, in violation of § Tennessee Code Annotated § 39-13-605; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; (6) negligence; and (7) invasion of privacy [*Id.* ¶¶ 45–115]. Generally, plaintiffs' claims are premised on the underlying contention that defendant "made specific warranties of safety, privacy, and guarantees of no indoor recording when listing and managing Braun's rental property" [*Id.* ¶¶ 46, 70, 79, 91, 102, 105, 110].

Defendant moves for dismissal for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted [Doc. 24, pp. 4–22]. In the alternative to dismissal, defendant moves the Court to strike plaintiffs' request for punitive damages as it relates to defendant [*Id.* at 22–23]. Defendant also moves to compel arbitration and stay the proceedings [Doc. 26]. Plaintiff opposes both of defendant's motions [Docs. 31, 32].

4

## II.     INITIAL DISPUTE — Plaintiff's Belated Responses

As an initial matter, the Court must decide whether to consider plaintiffs' untimely responses [Docs. 31, 32].  Pursuant to the Local Rules of this Court, plaintiffs had 21 days in which to respond to defendant's motion to dismiss [Doc. 23] and 14 days in which to respond to defendant's motion to compel arbitration [Doc. 26] which were both filed on April 25, 2024.  *See* E.D. Tenn. L.R. 7.1(a).  Plaintiffs' responses were thus due May 16, 2024, and May 9, 2024, respectively.  Plaintiffs did not respond to defendant's motions, however, until May 23, 2024, with no explanation as to belatedness of their responses.[2] Plaintiffs did not seek an extension of time to file their responses prior to the deadlines' expirations nor did plaintiffs seek leave from the Court to file their belated responses.  *See* Fed. R. Civ. P. 6(b)(1).  As such, defendant Airbnb argues that the Court should disregard plaintiffs' belated responses [Doc. 36, p. 2; Doc. 37, pp. 1–2].

"[D]eadlines are important things.  And when the Court establishes deadlines, the parties are obliged to follow them." *Century Indem. Co., v. Begley Co.*, 323 F.R.D. 237, 239 (E.D. Ky. 2018).  And a court is not required to consider an untimely response.  *See Castleberry v. Neumann L. P.C.*, No. 1:07-CV-856, 2008 WL 5744179, at *5 (W.D. Mich. July 9, 2008) (disregarding plaintiff's untimely response to defendant's motion for judgment on the pleadings and considering the motion unopposed). Nevertheless, "the Court is not inclined to strike an untimely filing that resulted in no delay in the proceedings." *Blankenship v. Parke Care Ctrs.*, 913 F. Supp. 1045, 1049 (S.D. Ohio 1995).

---

[2]  The Court also notes that plaintiffs filed their response one day after defendant filed a notice of plaintiffs' nonresponse to its motions [*See* Doc. 30].

Here, while the Court acknowledges that plaintiffs' responses are untimely, the Court nonetheless, in its discretion, will consider the belated filings. Specifically, the Court notes that its consideration of these responses has not delayed these proceedings, and defendant has not asserted any prejudice that would stem from the Court considering the belated filings.

## III.     MOTION TO DISMISS - Rule 12(b)(2)

### A.      Standard of Review

Plaintiffs bear the burden of establishing the Court's personal jurisdiction over defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court deems it unnecessary to conduct an evidentiary hearing on the issue of personal jurisdiction. Accordingly, the Court must consider the pleadings and affidavits in a light most favorable to plaintiffs, and dismissal under Rule 12(b)(2) is "proper only if all the specific facts which [plaintiffs] allege[] collectively fail to state a prima facie case for jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *accord Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2020) (citation and internal quotations omitted) (stating when the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) challenge, "the plaintiff's burden is relatively slight").

However, the Court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). And, once a defendant submits "affirmative evidence showing that the court lack[s] jurisdiction, mere allegations of

6

jurisdiction are not enough"; rather, a plaintiff must "set forth, by affidavit or otherwise, specific facts showing jurisdiction." *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019). A ruling in favor of a plaintiff does not necessarily end the issue of personal jurisdiction as a defendant may "continue to contest personal jurisdiction by requesting an evidentiary hearing or moving for summary judgment should the evidence suggest a material variance from the facts as presented by plaintiffs." *Anwar v. Dow Chemical Co.*, 876 F.3d 841, 847 (6th Cir. 2017).

"A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Where the state long-arm statute extends to the limits of the due process clause, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). Because Tennessee's long-arm statute "has been interpreted as coterminous" with the limits of the due process clause, *id.* (internal citation omitted), the Court considers whether exercising personal jurisdiction over defendant would violate due process.

A court may exercise personal jurisdiction over a defendant on the basis of general jurisdiction or specific jurisdiction. *Youn*, 324 F.3d at 417 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985), and *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). General jurisdiction requires a showing that a corporation's "affiliations with [Tennessee] are so 'continuous and systematic' as to render [them]

7

essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal citation omitted). Absent exceptional circumstances, a corporation is only at home in two places: (1) its place of incorporation and (2) its principal place of business. *Id.*

Turning to specific jurisdiction, a court may exercise specific jurisdiction over a defendant "in a suit arising out of or related to the defendant's contacts with the forum. *Conti*, 977 F.2d at 981 (6th Cir. 1992). The Sixth Circuit applies a three-part test, often termed the *Mohascho* test, for determining whether an exercise of specific jurisdiction falls within constitutional limits: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state"; (2) "the cause of action must arise from the defendant's activities there"; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Conti*, 977 F.2d at 981. "Each part of the *Mohasco* test represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *3 (6th Cir. May 8, 2024) (internal quotation marks omitted) (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)).

**B.    Analysis**

As an initial matter, it does not appear that plaintiffs oppose defendant's argument that the Court lacks general jurisdiction over defendant [*See* Doc. 24, p. 6; Doc. 31].  Thus, the Court will focus only on whether the Court has specific jurisdiction over defendant.

**1.    Purposeful Availment**

As stated previously, the first part of the *Mohasco* test is "the defendant must purposefully avail himself of the privilege of acting in the forum state."  *S. Mach. Co.*, 401 F.2d at 381.  Defendant contends that it did not purposefully avail itself of conducting business in Tennessee [Doc. 24, pp. 6–9].  First, defendant states that it maintains an online marketplace that is accessible worldwide, enabling *users* to direct where listings and bookings [*Id.* at 7].  And thus, "[t]hat the injury occurred in Tennessee was a product of Braun's and Plaintiffs' respective choice's," not defendant's [*Id.*].  Defendant insists that to find specific jurisdiction here "would be to mistake *plaintiff's* forum connections for *defendant's* forum connections[,]" which is insufficient to establish personal jurisdiction [*Id.* (quoting *Parker*, 938 F.3d at 840)].

Defendant draws the Court's attention to cases involving HomeAway (Vrbo), "an Airbnb competitor that similarly offers an online marketplace on which owners who list properties may connect with prospective guests" [*Id.* at 8].  In these cases, defendant states, courts have held that they lacked personal jurisdiction over HomeAway because "HomeAway's platform was 'accessible to all but targeted to no one in particular'" and when HomeAway set up its accessible, semi-interactive website, it did not thereby direct electronic activity into a specific state "'with the manifest intent of engaging in business or

9

other interactions within that state in particular'" [*Id.* at 8–9 (citing *Conrad v. Benson*, No. 9:20-cv-1811, 2020 WL 4754332, at *1 (D.S.C. Aug. 14, 2020))].[3]  Therefore, defendant contends, this Court should find it did not purposefully direct its activity into Tennessee so as to create specific jurisdiction [*Id.* at 9].

In opposition, plaintiffs argue that defendant purposefully availed itself to Tennessee "through its geographically selecting, highly interactive website" [Doc. 31, p. 3].  Plaintiffs contend that, using the Sixth Circuit's adopted "sliding scale" of interactivity to identify website activity that constitutes purposeful availment, defendant's website is sufficiently interactive to establish purposeful availment [*Id.* at 4–5 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Neogen Corp.*, 282 F.3d at 883].  Specifically, plaintiffs cite the fact that defendant's website directs users to create a username and password and directs users to particular geographic areas "by utilizing the information that the user inputs directly and through clicking on hyperlinks" [*Id.* at 5].  Additionally, plaintiff argues that Airbnb purposefully availed itself of the laws of Tennessee "because it [] entered into agreements with Tennessee residents . . . to list their residences on the Airbnb website" [*Id.*].  Matching users with hosts like Braun and obtaining fees from the hosts for its service of directing users to rentals, plaintiffs argue, demonstrate a "conscious decision to engage in the business of facilitating short term leases of real property in Tennessee" [*Id.* at 5–6].

_____

[3]  The Court notes that none of the cases cited by defendant are binding on this Court.

10

In its reply, defendant argues that plaintiffs present no evidence, despite their burden to do so, that defendant "directly targets or advertises to Tennessee residents, conducts a regular course of business in Tennessee, or otherwise purposefully avails itself of Tennessee" [Doc. 36, p. 4].

Purposeful availment "is something akin to a deliberate undertaking to do or cause an act or thing to be done in [Tennessee] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [Tennessee], something more than a passive availment of [Tennessee] opportunities." *Neogen Corp.*, 282 F.3d at 891 (citation omitted). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or third person." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (internal quotation marks omitted) (citing *Burger King Corp.*, 471 U.S. at 475); *accord CompuServe*, 89 F.3d at 1263 (citations and internal quotation marks omitted) ("The purposeful availment requirement is satisfied when defendant's contacts with the forum state proximately result from acts by the defendant *himself* that create a substantial connection with the forum State and when the defendant's conduct and connection with the forum are such that he should reasonably be anticipate being haled into court there.").

Therefore, defendant's relationship with Tennessee "must be the result of contacts that [d]efendant itself has created with Tennessee." *Elam v. Zazzle Inc.*, No. 2:20-CV-2167, 2021 WL 12319521, at *4 (W.D. Tenn. July 21, 2021) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Jurisdiction is thus improper if the plaintiff is the sole connection

11

between the defendant and Tennessee. *Id.* (citing *Walden*, 571 U.S. at 285). However, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (citation and internal quotation marks omitted). "[E]ven a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001); *see also Air Prods.*, 503 F.3d at 551–52 (determining that defendants' initiation of communications directed at the forum state for the purpose of continuing the parties' business relationship constituted purposeful availment ). Notably, it is not required that defendant have a physical presence in the forum state, Tennessee, to be subject to jurisdiction there. *Elam*, 2021 WL 12319521, at *4 (citing *Walden*, 571 U.S. at 285); *CompuServe, Inc.*, 89 F.3d at 1264.

A website operator, such as defendant, "purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 887; *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). However, as held routinely by courts in this Circuit, "the mere maintenance of an interactive, commercial website, accessible from anywhere, without more, cannot constitute purposeful availment." *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 986 (M.D. Tenn. 2024) (quoting *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, No. 3:09-412, 2009 WL 2823613, at *7 (M.D. Tenn. Aug. 28, 2009) (collecting cases)).

12

As referenced by plaintiffs, "to determine whether an operator of a website purposefully availed [itself] of the forum state, the Court looks at the website's level of interactivity." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (citation omitted). The Court evaluates a website's level of interactivity based on a "sliding scale," otherwise known as the *Zippo* sliding scale, which "ranges from purely passive sites that only offer information for the user to access, in which case jurisdiction is not proper, to highly interactive sites where a defendant clearly transacts business or forms contracts with users, in which case jurisdiction is proper." *Concord*, 738 F. Supp. 3d at 986 (citing *Imago Eyewear*, 167 F. App'x at 522); *see Zippo Mfg. Co.*, 952 F. Supp. at 1124. In the middle of the scale are "hybrid or interactive sites that allow users to 'exchange host information with the host computer.'" *Imago Eyewear*, 167 F. App'x at 522 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124). "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and the commercial nature of the exchanged information that occurs on the [website]." *Zippo Mfg. Co.*, 952 F. Supp. at 1124.

Considering plaintiffs' relatively slight burden at this stage, *see Estate of Thomson*, 545 F.3d at 360, the Court concludes that defendant purposefully availed itself of doing business in Tennessee.

First, it appears to be undisputed that defendant does business through an interactive website that allows individuals, including Tennessee residents, to search for, book, and list properties for rent [Doc. 31, p. 5]. *See Foresta v. Airbnb, Inc.*, No. CV 23-1379, 2024 WL 329524, at *4 (E.D. Pa. Jan. 29, 2024); *Matthew-Ajayi v. Airbnb, Inc.*, No. CV ADC-23-3035, 2024 WL 1769186, at *4 (D. Md. Apr. 24, 2024). "These features, along with the

13

remittance of money between guests and hosts, minus fees, places [defendant's] platform far beyond 'passive' websites that are purely informational." *Foresta*, 2024 WL 329524, at *4 (citing *Zippo Mfg. Co.*, 952 F. Supp. at 1124).[4]

As plaintiffs mention, defendant's website allows users to sign up for, open, and use an account [Doc. 31, p. 5]. *See Foresta*, 2024 WL 329524, at *5 (taking into account how Airbnb allows users to "sign up for an account, create new listings, and submit payments through its website" in its analysis of purposeful availment). Relatedly, and also emphasized by the plaintiffs, is defendant's website's search function, which is heightened when a user creates an account with defendant [*Id.*]. Specifically, when a user who has created an account searches for a property in a specific area and the user later returns to the website, the user is "presented with additional properties in the same geographic location as the previous search—without any prompting or searching" [*Id.*]. Defendant thus takes the geographical input of a user and uses it to further influence a user to rent a property in that geographical area or state. Therefore, a user searching for a rental property in Tennessee on one occasion would, on another occasion, be suggested similar properties in the same geographical area in Tennessee.

The Court does not find these website-function arguments to demonstrate that defendant's website is interactive to a degree "that reveals specifically intended interaction with residents of [Tennessee]." *Neogen Corp.*, 282 F.3d at 890 (citation omitted). First, an individual's ability to create an account on a website such as defendant's does not,

---

[4] Defendant does not appear to contest plaintiff's contention that its website is interactive under the *Zippo* sliding scale.

14

without more, establish a conscious decision on defendant's part to interact with a resident of any particular state. *Cf. Zippo Mfg. Co.*, 952 F. Supp. at 1126 (finding the defendant's argument that its contacts with Pennsylvania residents are fortuitous to be unavailing because the defendant "consciously chose to process Pennsylvania residents' applications and assign them passwords[,]" and the defendant "knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania"). Second, as to plaintiffs' emphasis on the geographical input of the user, and defendant's algorithmic use of such input to suggest further properties in the same area, this also does not indicate intended interactions with Tennessee residents specifically. Though a user may search for properties within Tennessee, this does not suggest that the user themselves is a Tennessee resident.

Other aspects of defendant's website, however, as well as defendant's relationship with Tennessee resident property owners, support a finding of purposeful availment.

First, defendant's business is undoubtedly focused on advancing the leasing of real property, "which is necessarily and inextricably tied to the land, and therefore, the [state] where that land is found" [Doc. 31, pp. 5–6 (stating defendant "specializes in leasing real property which is inextricably tied to the forum state where it is located")]. *Foresta*, 2024 WL 329524, at *4. Defendant is also aware of the location of properties listed on its site and chooses to let properties in Tennessee be listed on the site [*Id.* at 7 (Defendant "currently has thousands of properties listed in Tennessee on its website."). *See AMB Media, LLC*, 2024 WL 2052151, at *6 (quoting *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 9 (1st Cir. 2018)) (emphasizing that the defendants chose to repeatedly serve

15

Tennessee customers "without taking any 'steps to limit [their] website's reach or block its use by [those] customers'"). And, though perhaps a passive trait, defendant holds itself out as welcoming Tennessee business by presenting itself as a "global travel community" [Doc. 1 ¶ 19]. *See Neogen Corp.*, 282 F.3d at 891 (finding that the defendant's statement on its website that it would "do a genetic newborn screening test for any parent in any state" to support a finding of purposeful availment).

Furthermore, defendant places itself "in the middle of transactions between users . . . , significantly increasing the user interactivity and extent of business ties with [Tennessee]" [Doc. 31, p. 5]. *Foresta*, 2024 WL 329524, at *4. Specifically, as plaintiff states, defendant matches users with hosts and "obtains fees from the [h]osts for the service of directing users to a rental based on the information the user inputs into the website" [*Id.*]. Defendant obtains the fees from hosts as part of an agreement it enters into with such hosts, including those who are Tennessee residents like Wayne Braun, and in doing so, directly benefits from continuing business relationships with those in Tennessee [*Id.*]. *See Neogen Corp.*, 282 F.3d at 892 (noting that, although customers from Michigan contacted the defendant, the defendant could not accept payments from customers with Michigan addresses without intentionally choosing to conduct business in Michigan). Thus, defendant's contacts with Tennessee are not "random" or "fortuitous." *See Air Prods.*, 503 F.3d at 551; *accord Foresta*, 2024 WL 329 524, at *5 (finding Airbnb could not reasonably maintain that its contacts with the forum state homeowners were merely "fortuitous" because "the location of property listed for rent [does not] change[] at any point throughout Airbnb's business relationship with a homeowner . . . , so it can hardly come as a shock

16

when Airbnb is haled into court in the state where the property is located"); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden*, 571 U.S. at 285) (stating that a defendant can deliberately reach out beyond its home by "'exploit[ting] a market' in the forum State or entering a contractual relationship centered there"); *Zippo Mfg. Co.*, 952 F. Supp. at 1126 (citation omitted) (maintaining that "[w]hen a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there'").

Accordingly, the Court finds plaintiffs have met their slight burden of establishing purposeful availment here.

## 2.    Arising from Defendant's Activities

As to the second part of the Sixth Circuit's specific personal jurisdiction test, that "the cause of action must arise from the defendant's activities [in the forum state,]" *S. Mach. Co.*, 401 F.2d at 381, defendant argues that the link between the cause of action and its activities are insufficient to provide establish specific jurisdiction [Doc. 24, p. 8]. Defendant states that plaintiffs may argue that a sufficient link exists "because without Airbnb's website, they would not have located and booked the Tennessee Property at which Braun surreptitiously recorded them" [*Id.*].  However, mere but-for causation, defendant argues, is insufficient to establish the requisite jurisdictional link due to its extreme inclusivity, "'embrac[ing] every event that hindsight can logically identify in the causative chain'" [*Id.* (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 507–09 (6th Cir. 2014))].  Ultimately, defendant contends that "making a website available to millions of hosts and guests anywhere in the word—and setting basic ground

17

rules . . . against behavior that is already undesirable and illegal—is simply 'too distant' from the causes of actions arising from Braun's unilateral and unpredictable criminal behavior" [*Id.* at 10–11]. And thus, the connection between defendant's availability in Tennessee and Braun's conduct, defendant claims, is not "substantial" to establish personal jurisdiction [*Id.* at 11].

In response, plaintiffs argue that defendant takes too narrow a view of plaintiffs' claims, pointing to the allegation in their complaint that states "Defendant[] Airbnb . . . made specific warranties of safety, privacy, and a guarantee of no indoor cameras when listing and managing Braun's rental property" [*Id.* at 6 (quoting Doc. 1 ¶ 102)]. Plaintiffs argue that defendant was specifically warranting that there would be no indoor cameras where the property was located, in Tennessee, and thus, plaintiffs' cause of action necessarily arises out of defendant's activities in Tennessee [*Id.*].

The second prong of *Mohasco* is satisfied "if a defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe, Inc.*, 89 F.3d at 1262. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000). This prong "does not require that the cause of action formally 'arise from' defendant's contacts with the forum" but "only 'that the cause of action . . . *have a substantial connection* with the defendant's in-state activities.'" *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco Industries*, 401 F.2d at 384 n.27) (emphasis in original). Yet, as defendant contends, "more than mere but-for causation is

18

required to support a finding of personal jurisdiction. To the contrary, the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Beydoun*, 768 F.3d at 507. If only but-for causation were required, it would be "vastly overinclusive in its calculation of a defendant's reciprocal obligations" and would have "no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain," resulting in "no meaningful relationship to the scope of the 'benefits and protection' received from the forum." *Id*. at 508.

As discussed previously, defendant's contacts with Tennessee are through the agreements defendant has with Tennessee residents to list their residences for short-term rentals in exchange for a fee. Here, the operative facts of the controversy are that defendant has expressed customer safety as a priority, promised that "[e]very Airbnb reservation is scored for risk before it's confirmed," and flagged and investigated "suspicious activity before it happens" [Doc. 1 ¶ 20]. Further, plaintiff alleges that defendant has developed "community standards" which include "guidelines that require hosts to disclose the presence of security cameras and other recording devices to the guest" [*Id.* ¶ 21]. More specifically, defendant requires that hosts must indicate the presence of any security camera or recording device, regardless of if it is powered on, "in the **Things to know** section under **Health & safety**" [*Id.* (emphasis in original)]. And hosts are required by defendant to "disclose how guests will be monitored and if an active recording is taking place" [*Id.*]. If a disclosure if made after booking, defendant allows the guest to cancel the booking and receive a refund [*Id.*]. Furthermore, defendant promises to enforce any violation of its community standards [*Id.*]. The core of the controversy, as expressed by plaintiffs multiple

19

times, is that defendant made "specific warranties of safety, privacy, and guarantees of no indoor recordings when listing and managing Braun's rental property" [*Id.* ¶¶ 46, 70, 79, 91, 102, 110].

Ultimately, the Court finds that plaintiffs' claims arise from defendant's Tennessee contacts under the Sixth Circuit's "lenient standard." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017). Arguing that plaintiffs' claims arise merely out of Braun's conduct, and that defendant served just as the platform that brought plaintiffs and Braun together, is misinterpreting plaintiffs' specific claims against defendant. Plaintiffs' claims stem directly from defendant's requirements of Tennessee hosts as part of their mutual agreement. Thus, the second prong of the *Mohasco* test is met here, considering all facts in the light most favorable to plaintiffs.

### 3.  Reasonableness

The final part of the *Mohasco* test is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381.

Regarding this final requirement, defendant argues that "Airbnb lacks a 'substantial enough connection with the forum state to make the exercise of jurisdiction over [it] reasonable" [*Id.* (quoting *Intera Corp. v. Henderson*, 428 F. 3d 605, 615 (6th Cir. 2005))]. Defendant declares that "[t]o hold that the use of Airbnb's globally available marketplace could give rise to specific jurisdiction in Tennessee would subject Airbnb to personal

20

jurisdiction in *any* case in which a user chose to make a booking" [*Id.* (emphasis in original)].

Plaintiffs, on the other hand, argue that an exercise of personal jurisdiction over defendant is fair and reasonable because (1) defendant has not submitted any facts or proof demonstrating that litigating in Tennessee would be unduly expensive and inconvenient; (2) Tennessee has a strong interest in adjudicating controversies to residents harmed within Tennessee; and (3) plaintiffs have a strong interest in obtaining relief in Tennessee [Doc. 31, p. 7].

The purpose of the final *Mohasco* factor is to ensure "that the exercise of personal jurisdiction is consistent with notions of 'fair play and substantial justice.'" *MAG IAS Holdings, Inc.*, 854 F.3d at 903 (quoting *Burger King Corp.*, 471 U.S. at 476–77). "When the first two prongs of [the] personal jurisdiction test are met, there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.'" *Id.* at 903–04 (quoting *Air Prods.*, 503 F.3d at 554). The Supreme Court has held that the reasonableness analysis is a function of three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus., Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 113 (1987).

Defendant has not expressed any burden in defending the present action, only a disagreement with the exercise of personal jurisdiction in the first place. The Court gleans no evidence from the record that litigating this action in Tennessee would be unduly expensive or inconvenient for defendant. Next, the Court finds that Tennessee has a strong

21

interest in adjudicating controversies involving its residents harmed within its bounds.[5]  *See MAG IAS Holdings, Inc.*, 854 F.3d at 904 (finding Michigan, the forum state, to have interest in the litigation because the defendant allegedly caused harm to a Michigan business, which also impacted Michigan-based employees).  Lastly, the Court concludes that plaintiffs certainly have an interest in pursuing their claims.  Therefore, plaintiffs have met their burden in establishing the third and final *Mohasco* prong, affirming the exercise of personal jurisdiction of this Court over defendant.  Accordingly, the Court **DENIES** defendant's motion to dismiss this action to the extent it asserts a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) [Doc. 23].

## IV.    MOTION TO DISMISS – Rule 12(b)(6)

### A.    Standard of Review

As previously discussed, defendant also moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 23].  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[5]  The Court acknowledges, however, that not all plaintiffs are residents of Tennessee, though the majority are.

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs [(or the pleading party, as the case may be)], accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## B.    Analysis

Defendant moves to dismiss all seven of plaintiffs' claims against it: (1) interception and disclosure of wire, oral, or electronic communications, in violation of 18 U.S.C. § 2511; (2) unlawful photographing in violation of privacy, in violation of Tennessee Code

23

Annotated § 39-13-605; (3) observation without consent, in violation of Tennessee Code Annotated § 39-13-607; (4) negligent infliction of emotional distress ("NIED"); (5) intentional infliction of emotional distress ("IIED"); (6) negligence; and (7) invasion of privacy [Doc. 24, pp. 10–28; *see* Doc. 1 ¶¶ 45–115]. Notably, in their response to defendant's motion to dismiss, plaintiffs only appear to defend their claim for negligence [Doc. 31, pp. 8–11]. *See Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) (stating that the district court correctly noted that the plaintiff had abandoned certain claims "by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *Loschiavo v. Bank of America, N.A.*, No. 1:15 CV 168, 2015 WL 3742491, at *3 (N.D. Ohio June 15, 2015) (dismissing plaintiff's claim for invasion of privacy because plaintiff "offer[ed] no substantive opposition to [the] defendant's motion" with respect to the claim, and therefore, the defendant's motion was unopposed).

Defendant discusses plaintiffs' claims in three groups: (1) privacy, encompassing claims 1, 2, 3, and 7; (2) emotional distress, encompassing claims 4 and 5; and (3) negligence, which is claim 6 [Doc. 24, pp. 10–28]. The Court will address plaintiffs' claims according to these groupings.

### 1. Privacy Claims

#### a. 18 U.S.C. § 2511 (Claim 1)

Plaintiffs' first claim is that defendant violated 18 U.S.C. § 2511 [Doc. 1 ¶¶ 45–58], part of the federal Wiretap Act, which criminalizes the intentional interception of an electronic communication:

[A]ny person who—

24

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished [by a fine or by imprisonment].

18 U.S.C. § 2511(1)(a).[6]  A separate section of the Wiretap Act provides a private cause of action for persons who are victimized by such criminal conduct:

Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

In their complaint, under the section entitled "First Cause of Action," plaintiffs do not allege that defendant intentionally intercepted or endeavored to intercept oral communications; rather, plaintiffs allege this of Braun [Doc. 1 ¶ 46 ("Wayne Braun, . . . via use of 'Blink' cameras within the property, intentionally intercepted and/or endeavored to intercept live and/or recorded video and audio, including oral communications, of the Plaintiff while they resided at the property.")].[7]  Instead, plaintiffs allege that defendant, along with co-defendant Evolve, "made specific warranties of safety, privacy, and guarantees of no indoor recording when listing and managing Braun's rental property" [*Id.*].

---

[6]  The Court notes that there are other subsections of this statute, but plaintiffs' complaint only appears to implicate subsection (a) [Doc. 1 ¶¶ 46, 48].

[7]  Plaintiffs make similar allegations throughout the complaint [*See id.* ¶ 70 ("Braun . . . knowingly spied upon and otherwise observed Plaintiffs), ¶ 110 ("Wayne Braun[] surreptitiously recorded Plaintiffs in various stages of undress, during intimate and private conversations, and during their most intimate moments, including during sexual relations.")].

25

Curiously, under other claims within the complaint, plaintiffs allege that, along with Braun and Evolve, defendant "intentionally intercepted and/or endeavored to intercept the sounds or events of the [p]laintiffs while they were guests and lawful occupants of the cabin" through "surreptitious recordings" [*Id.* ¶¶ 60–61, 84–87, 94, 113]. Plaintiffs, however, in other portions of the complaint, allege that only Braun recorded plaintiffs while defendant's conduct was limited to making warranties against such recordings [*Id.* ¶¶ 70, 81–82, 91, 104–105, 110]. The Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, . . . or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (per curiam). Even if not necessarily contradictory statements, the factual allegations in this case make it clear that Braun was in possession of and had control over the recording devices at issue [Doc. 1 ¶¶ 30–44 (stating that Braun had purchased the "Blink" cameras discovered by law enforcement in the cabin because of their discreetness, that Braun had, without prompting, texted plaintiffs directly "to explain" the cameras within minutes of plaintiffs' discovery of them, and that Braun was convicted of six counts of observation without consent pursuant to Tennessee Code Annotated § 39-13-607)]. Plaintiffs allege no facts that demonstrate that defendant bought the recording devices, was in possession of the recording devices, or had access to the video and sound functions of the devices. And while plaintiffs allege that defendant failed to inform plaintiffs that Braun's cabin had interior cameras capable of recording [*id.* at ¶ 28], this does not establish intent, much less intent to intercept or endeavor to intercept. *See also B & G Towing, LLC*

26

*v. City of Detroit*, 828 F. App'x 263, 267 (6th Cir. 2020) (emphasis in original) (stating that the plaintiff's complaint which nominally alleged violations of § 2517 and §2520(g) failed to plead "a critical element of the claim: that the City *willfully* used the wiretap information in violation of Title III").

Therefore, as to plaintiffs' claim pursuant to 18 U.S.C. § 2511 against defendant, such claim fails as plaintiffs' complaint contains no factual content to allow the Court to draw the reasonable inference that defendant intentionally intercepted or endeavored to intercept plaintiffs' communications. *See Ashcroft*, 556 U.S. at 678. Accordingly, plaintiffs' first claim against defendant is **DISMISSED**.

### b. Tennessee Code Annotated § 39-13-605 (Claim 2)

Plaintiffs' second claim against defendant is pursuant to Tennessee Code Annotated § 39-13-605 which criminalizes the photography of another without consent if the photograph meets certain criteria [Doc. 1 ¶¶ 59–67]. The relevant section here provides:

> It is an offense for a person to knowingly photograph, or cause to be photographed, an individual without the prior effective consent of the individual, . . . if the photograph:
>
> (1)(B) Was taken for the purpose for sexual arousal or gratification of the defendant.

Tenn. Code. Ann. § 39-13-605(a)(1)(B).

In support of their claim, plaintiffs reassert the conclusion that defendant "intentionally intercepted and/or endeavored to intercept the sounds or events of the Plaintiffs" [Doc. 1 ¶ 60] which, as discussed *supra*, is unsupported by the factual allegations in this case, or lack thereof. Plaintiffs maintain that the "surreptitious

27

recordings" taken of them in Braun's cabin are prohibited under Tennessee Code Annotated § 39-13-605, and that Braun "committed the acts . . . for his own personal gratification, sexual or otherwise" [*Id.* ¶¶ 61, 65].

In moving to dismiss this claim, defendant argues that Tennessee Code Annotated § 39-13-605 is a criminal statute "for which there is no private cause of action" [Doc. 24, p. 17 (footnote omitted)].

Upon review of the statute, the Court finds that it does not, on its face, provide for a private civil cause of action nor is there any case law indicating such. *See Culberson v. Doan*, 125 F. Supp. 2d 252, 280 (S.D. Ohio 2000) (citing *Student Gov't Ass'n of Wilberforce Univ. v. Wilberforce Univ.*, 578 F. Supp. 935, 941 (S.D. Ohio 1983)) ("Where it is not apparent that the legislature intended to create a cause of action by enacting a statute, no private civil cause of action shall exist."); *Bush v. Goodwin*, No. 3:15-CV-524, 2018 WL 576850, at *10 (E.D. Tenn. Jan. 26, 2018) (citation omitted) (stating, where the plaintiff asserted federal and criminal offenses in his complaint, that "the decision to investigate and prosecute any particular individual [or entity] is the prerogative of the executive branch, not the judicial").

Therefore, plaintiffs' second claim against defendant is **DISMISSED** because Tennessee Code Annotated § 39-13-605 is not a viable legal theory under which plaintiff can recover against this defendant.

### c.     Tennessee Code Annotated § 39-13-607 (Claim 3)

Next, plaintiffs bring a claim against defendant pursuant to Tennessee Code Annotated § 39-13-607 which criminalizes observation without consent [Doc. 1 ¶¶ 68–77]:

28

It is an offense for a person to knowingly spy upon, observe or otherwise view an individual, when the individual is in a place where there is a reasonable expectation of privacy, without the prior effective consent of the individual, if the viewing:

(1) Would offend or embarrass an ordinary person if the person knew the person was being viewed; and

(2) Was for the purpose of sexual arousal or gratification of the defendant.

Tenn. Code Ann. § 39-13-607(a)(1)–(2).

In support of this cause of action, plaintiffs state that Braun, via cameras, knowingly spied on plaintiffs in a place where they had a reasonable expectation of privacy and without their consent [*Id.* at ¶ 70]. Further, plaintiffs contend that due to the placement of the cameras, the violation of plaintiffs' privacy "would most certainly offend or embarrass an ordinary person[,]" and Braun "most certainly engaged in this violation of the Plaintiff[s'] privacy for the purpose of sexual arousal or gratification" [*Id.*]. Finally, plaintiffs reallege that defendant, along with Evolve, "made specific warranties against such surreptitious recording and blatant violations of the Plaintiffs' rights" [*Id.*].

For the same reasons discussed above, *supra* Section IV(B)(1)(b), the Court finds that plaintiffs' third claim against defendant is not a viable legal theory under which plaintiffs can recover. The Court cannot find, upon review of the statute, a private civil cause of action or any case law indicating such. *See Culberson*, 125 F. Supp. 2d at 280. And plaintiffs do not make any reference to a private civil cause of action in their complaint. Therefore, plaintiffs' third claim against defendant is **DISMISSED**.

#### d. Invasion of Privacy (Claim 7)

Plaintiffs' final privacy claim, and its seventh cause of action, is for invasion of privacy [Doc. 1 ¶¶ 109–115]. In order to establish an invasion of privacy claim for intrusion upon seclusion, a plaintiff must establish "(1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person." *McClanahan v. Medicredit, Inc.*, No. 3:19-cv-163, 2020 WL 6204419, at *10, (M.D. Tenn. Oct. 22, 2020) (quoting *Teno v. Iwanski*, 464 F. Supp. 3d 924, 940 (E.D. Tenn. 2020)).

In support of their claim for invasion of privacy, plaintiffs state that Braun recorded plaintiffs in intimate moments, and defendant again "made specific warranties of safety, privacy, and guarantees of no indoor cameras when listing . . . Braun's rental property" [Doc. 1 ¶ 110]. Plaintiffs contend they never consented, implicitly or explicitly, to a live projection or recording in various intimate moments [*Id.* ¶ 111]. Furthermore, plaintiffs allege that defendant "intentionally intruded, either physically or in another way, upon the [p]laintiffs' seclusion or solitude[,]" and "[a]ny reasonable person would find the alleged intrusion to be highly offensive, even if the alleged recordings remained unpublished" [*Id.* ¶ 112]. And making these recordings "is so extreme and outrageous as to exceed all possible bounds of decency[,]" atrocious, and utterly intolerable in a civilized society, "that it should not be permitted in society without consequences" [*Id.* ¶ 113].

In its motion to dismiss, defendant argues that plaintiffs' claim should be dismissed because "it was Braun, and Braun alone, who invaded Plaintiffs' privacy" [Doc. 24, p. 17]. And in fact, plaintiffs' allegations against defendant are that defendant made "statements

30

*against* invasions of privacy, not committing them" [*Id.* at 18]. Lastly, defendant asserts that plaintiffs' invasion of privacy claim requires intent, yet plaintiffs "do not and cannot allege that [defendant] intended . . . that Braun would surreptitiously record them" [*Id.* at 19].

The Court finds that plaintiffs have failed to plead sufficient factual matter that, accepted as true, allows the Court to draw the reasonable inference that defendant is liable for invasion of privacy. *Ashcroft*, 556 U.S. at 678. First, plaintiff gives only a threadbare recital of the elements of an invasion of privacy claim. *Id.* Second, the facts alleged as part of this cause of action, as defendant emphasizes, do not implicate an intentional intrusion upon plaintiffs' seclusion; rather, plaintiffs' factual allegations against defendant are based on supposed warranties and guarantees related to safety and recording devices. Accordingly, plaintiffs' claim against defendant for invasion of privacy is **DISMISSED**.

### 2.    Emotional Distress Claims

#### a.    NIED (Claim 4)

Moving on to plaintiffs' emotional distress claims, plaintiffs first allege negligent infliction of emotional distress [Doc. 1 ¶¶ 78–89]. "To survive a motion to dismiss, an NIED claim must allege the elements of general negligence plus the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence." *Slowik v. Lambert*, 529 F. Supp. 3d 756, 767 (E.D. Tenn. 2021) (citing *Lourcey v. Est. of*

31

*Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004)).[8]  "A serious or severe emotional injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  *Ramsey v. Beavers*, 931 S.W.2d 527, 532 (Tenn. 1996).  NIED does not allow recovery "for fright or fear alone." *Id.*

In support of their NIED claim, plaintiffs begin by reasserting their previous allegations as discussed above [Doc. 1 ¶ 78].  Next, plaintiffs contend that Braun had a duty to not invade plaintiffs' privacy where plaintiffs had a reasonable expectation of privacy, and he breached such duty in recording plaintiffs in intimate moments without their consent [*Id.* ¶¶ 79–83].  Plaintiffs further assert that all defendant "negligently caused, or disregarded the substantial probability of causing[] severe emotional distress to Plaintiffs in surreptitiously recording them" during intimate moments [*Id.* ¶ 84].  The conduct of defendants, plaintiffs assert, constitutes negligent conduct on the part of defendant, a negligent violation of a statutory standard of conduct, and negligent infliction of emotional distress [*Id.* ¶¶ 85–87].

In its motion to dismiss, defendant argues that plaintiffs have not alleged "outrageous" conduct on the part of defendant, and that any outrageous conduct was committed by Braun, not defendant [Doc. 24, pp. 19–20].  To the contrary, defendant states, it set rules "aimed to *discourage* illegal surreptitious recording" [*Id.* at 20].  Ultimately,

---

[8]  The elements of a general negligence claim are duty, breach, injury or loss, causation in fact, and proximate or legal cause.  *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 901 (M.D. Tenn. 2022) (citation omitted).

32

defendant argues that plaintiffs have merely recited the legal elements of an NIED claim, and plaintiffs failed to allege a duty on the part of defendant to prevent Braun's recording [*Id.* at 20–21].

Regardless of the Court's findings regarding plaintiffs' negligence claim below, plaintiffs have abandoned their claims of NIED by failing to respond to defendant's argument. *See Bredesen*, 507 F.3d at 1007–08 (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the defendant's motion to dismiss). Given this abandonment, plaintiffs have conceded the point, and therefore, plaintiffs' NIED claim against defendant is **DISMISSED**. *See ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021) ("By failing to respond to Defendants' argument . . . , Plaintiffs have indeed abandoned their claims").

### b.  IIED (Claim 5)

Plaintiffs' next claim is for intentional infliction of emotional distress [Doc. 1 ¶¶ 90–100]. To establish a claim of IIED under Tennessee law, a plaintiff must plead sufficient facts that show that (1) the conduct he complains of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct resulted in serious mental injury. *Fitzgerald v. Hickman Cnty. Gov't*, No. M2017-00565-COA-R3-CV, 2018 WL 1634111, at *14 (Tenn. Ct. App. Apr. 4, 2018) (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)). "In describing these elements, [the Tennessee Supreme Court has] emphasized that it is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Lourcey*, 146 S.W. 3d at 51 (citation and internal

33

quotation marks omitted). Rather, a plaintiff must "show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). This indicates that "'[t]he standard for outrageous conduct is high, indeed, and cases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between." *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (internal citation and quotation marks omitted).

Besides reasserting its previous factual allegations, plaintiffs under this claim assert that the acts and conduct of defendant constitute IIED "as it is so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community" [Doc. 1 ¶ 93].

Defendant argues that plaintiffs fail to allege "outrageous" conduct on its part, and any alleged warranty or guarantee regarding safety it may have put forth shows an aim to discourage surreptitious recording [Doc. 24, pp. 19–20]. Furthermore, defendant contends that it "did not act intentionally or recklessly in telling hosts *not* to surreptitiously record their guests" [*Id.* at 20].

Even accepting plaintiffs' allegations as true and drawing every reasonable inference in their favor, the Court concludes that plaintiffs have not plausibly alleged, as to defendant, any "outrageous" conduct as defined and required by the tort of IIED. Defendant's conduct of making warranties related to safety and the absence of indoor cameras when listing Braun's property cannot be said to "go beyond all possible bounds

34

of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lourcey*, 146 S.W. 3d at 51. Furthermore, plaintiffs do not even allege that defendant committed any act "intentionally" or "recklessly"," a required element of an IIED claim. *Fitzgerald*, 2018 WL 1634111, at *14 (citation omitted). Accordingly, plaintiffs' IIED claim against defendant is **DISMISSED**.

### 3. Negligence Claim (Claim 6)

Plaintiffs' sixth claim against defendant, and the only claim it defends, is its negligence claim [Doc. 1 ¶¶ 101–08].[9] In Tennessee, to state a claim for negligence, a plaintiff must plead the following elements: "'(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.'" *Kae v. Cumberland Univ.*, 194 F. Supp. 3d 676, 681 (M.D. Tenn. 2016) (quoting *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)).

For their negligence claim, plaintiffs allege, in addition to all previous factual allegations discussed, that defendant breached its duty "by failing to meet their specific warranties of safety, privacy, and a guarantee of no indoor cameras when listing" Braun's property [Doc. 1 ¶ 105]. And as a direct and proximate result of defendant's negligence, plaintiffs have suffered damages [*Id.* ¶ 107].

---

[9] As discussed previously, where a party fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim." *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010); *accord Bredesen*, 507 F.3d at 1007–08 (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the defendant's motion to dismiss).

35

Defendant argues that plaintiff has failed to state a claim of negligence because plaintiffs fail "to plausibly allege that [defendant] owed them a duty" [Doc. 24, p. 21]. First, defendant asserts that the law recognizes a general no-duty rule to protect others from the dangerous conduct of third persons, and that this law "yields only in exceptional circumstances: when 'the defendant stands in some special relationship to either the person who is the source of danger, or to the person who is foreseeably at risk from the danger,' . . . or when the defendant 'voluntarily undertook' such a duty" [*Id.* (citations omitted)]. Operating under this law, defendant maintains that plaintiffs do not suggest that they or Braun have a special relationship with defendant, noting that a routine business-customer relationship "does not rise to the level of a special relationship" [*Id.* at 21–22]. And regardless of whether defendant had a duty to plaintiffs, "that duty would not extend to unforeseeable harms like Braun's unpredictable criminal misconduct" [*Id.* at 21, 25–27 (citation omitted)].

Defendant also contends that plaintiffs' "conclusory allegation that [defendant] assumed a duty to prevent Braun's criminal actions is unsupported and belied by Plaintiffs' own specific allegations [*Id.*]. "Tennessee law is clear that merely setting rules against misconduct does not constitute a voluntary undertaking to prevent the prohibited behavior[,]" defendant alleges [*Id.* at 23 (citation omitted)]. And the statements on defendant's website related to safety "do not come close to a warranty, guarantee, or undertaking to ensure that the millions of properties listed on Airbnb's marketplace around the globe are free of undisclosed recording devices" [*Id.*]. Voluntary undertakings,

36

defendant maintains, must be specific under Tennessee law and defendant "simply did not undertake the specific duty that Plaintiffs seek to impose here" [*Id.* at 24].

In response, plaintiffs state that defendant "voluntarily assumed a duty to act reasonably for the protection of its guests" [Doc. 31, p. 9]. Specifically, defendant "had an affirmative duty to reasonably ensure that its assertions regarding the representation of the [p]roperty rendered accurate" [*Id.*]. Plaintiffs emphasize that they do not allege that defendant had a legal obligation to control the conduct of guests and hosts or to verify *all* information provided by its members [*Id.* at 9–10].

Even accepting as true the factual matter alleged in their complaint, plaintiffs have failed to state facts to plausibly show that defendant was negligent. *See Ashcroft*, 556 U.S. at 678. First, plaintiffs make no statement establishing the duty defendant owed to the general public, much less to plaintiffs here. *See Baldeo v. Airbnb, Inc.*, No. 20CIV7771PGGVF, 2024 WL 1367189, at *6 (S.D.N.Y. Mar. 30, 2024) (adopting magistrate judge's recommendation to dismiss plaintiffs' negligence claim because "[t]he Complaint pleads no facts suggesting that Airbnb owed a duty of care" to plaintiffs). Plaintiffs merely assert that this "duty," however defined, was breached by defendant's failure "to meet their specific warranties of safety, privacy, and guarantees of no indoor cameras" when listing Braun's rental property [Doc. 1 ¶ 105]. *Cf. Hlad v. Hirsch*, No. 3:23-CV-785, 2024 WL 1197516, at *7 (M.D. Pa. Mar. 20, 2024) (finding that the plaintiffs had sufficiently alleged breach of duty on the part of Airbnb where the complaint provided that (1) "Airbnb employed, hired, and supervised employees, servants, agents and/or contractors responsible for advertising and/or inspecting the premise, repairing, cleaning,

37

and keeping them in a safe and reasonable conditions[;]" (2) the defendants, including Airbnb, "had exclusive control over the premises and therefore had a duty to inspect and maintain the property to ensure it remained reasonably free of hazards, have their employees and agents maintain the walking surfaces, and have policies and procedures in place that ensured a safe environment for its residents and visitor[;]" and (3) the defendant, including Airbnb, "breached their duty to inspect the premises, warn of dangerous conditions, employ competent employees to maintain the premises, locate hazards, enforce safety policies and guidelines, and monitor conditions at their property").

Plaintiffs only allege such a duty of defendant in their response to defendant's motion to dismiss [Doc. 31, pp. 8–10]. As discussed above, it is in this response that plaintiffs first allege that defendant "owed them a duty of reasonable care" and "voluntarily assumed a duty to act reasonably for the protection of its guests" [*Id.* at 8–9]. Plaintiffs' belated attempt to define and allege a duty owed to them by defendant, however, does not cure the defects in their complaint. *See Ashcroft*, 556 U.S. at 678 (emphasis added) (citation omitted) (stating that "a *complaint* must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"); *Moody v. Livingston, Cnty. of*, No. CV 23-10508, 2023 WL 7312509, at *1 n.1 (E.D. Mich. Oct. 17, 2023), *report and recommendation adopted,* No. 23-10508, 2023 WL 7305030 (E.D. Mich. Nov. 6, 2023) (citations omitted) ("[T]he law is clear that a plaintiff may not cure deficiencies in his complaint by asserting new allegations . . . in a response to a defendant's motion to dismiss.").

Furthermore, plaintiffs fail to point to any law or regulation that vests defendant with a particular duty of care stemming from a relationship with users of its online platform [*See id.* at 8 (stating that a plaintiff must plead, in part, that "the defendant owed them a legal duty" to survive a motion to dismiss on a negligence claim) (citation omitted)]. *See Esposito v. Airbnb Action, LLC*, No. 5:20-CV-5204, 2022 WL 2980700, at *5 (W.D. Ark. July 27, 2022). Much like the plaintiffs in *Esposito*, plaintiffs here "pin their hopes on [defendant's] 'Trust and Safety' webpage" and defendant's "community standards" [*See* Doc. 1 ¶¶ 20–21]. *Id.* Nowhere, however, do plaintiffs explain how defendant's statements prioritizing customer safety and requiring hosts to disclose camera/recording devices on their rental properties equate to "warranties" and "guarantees" [Doc. 1 ¶ 105]. Moreover, in its response to defendant's motion to dismiss, plaintiffs assert that defendant's utilization of third-party hosts, such as Braun, does not absolve defendant of "its contractual duties that it voluntarily assumed" [Doc. 31, pp. 9–10]. But plaintiffs do not assert any contractual duties on the part of defendant in its complaint, much less does it include a purported contract as an attachment [*See* Doc. 25-1, p. 8 (Airbnb's Terms of Service) ("You acknowledge that Airbnb has the right, but does not have any obligation, to monitor the use of the Airbnb Platform and verify information provided by our Members.")].[10]

Lastly, plaintiffs have provided only a "threadbare recital[]" of the element of proximate cause, stating only that "as a direct and proximate cause of Defendants' negligence, Plaintiffs have suffered general damages . . . " [Doc. 1 ¶ 107]. *Ashcroft*, 556

---

[10] Even assuming *arguendo* that defendant had made specific warranties as plaintiffs allege, plaintiffs offer no factual allegations as to how these warranties give rise to a legal duty.

U.S. at 678; *accord Kae*, 194 F. Supp. 3d at 681 (citation omitted) (providing that an essential element of a claim of negligence is proximate cause). A complaint must contain more than "'labels and conclusions' or 'formulaic recitation of the elements of a cause of action." *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555). Furthermore, plaintiffs do not separate how defendant's alleged duty and breach proximately caused plaintiffs' injury from how defendants Evolve and Braun's alleged duty and breach caused plaintiffs' injury, raising difficulty in determining the "plausibility of entitlement to relief" from defendant specifically [*See* Doc. 1 ¶ 107]. *Ashcroft*, 556 U.S. at 678.

Accordingly, the Court finds that plaintiffs have failed to sufficiently allege a negligence claim against defendant, and thus, such claim is **DISMISSED**.

## V. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss [Doc. 23] is **GRANTED in part** and **DENIED in part**. Accordingly, all claims against defendant Airbnb, Inc. are hereby **DISMISSED**, and defendant's motion to compel arbitration and stay [Doc. 26] is **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

40